[Nos. 6533–9–II; 6591–6–II.   Division Two.   November 1, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. KEITH
R. DIBLEY, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
DIBLEY, *Appellant.*

*Rogers Wilson, Jr.,* for appellant Keith R. Dibley (appointed counsel for appeal).

*Roger A. Hunko,* for appellant Michael Dibley (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Reinhold P. Schuetz, Deputy,* for respondent.

WORSWICK, J.—The Dibley brothers, Michael and Keith, were each charged with first degree robbery. Michael bargained for a guilty plea. Keith took his chances with a jury and was convicted. Part of the evidence admitted against him was a portion of Michael's statement on plea of guilty in which he recited his participation in the event. The brothers both appeal, claiming that use of this statement was a violation of Michael's plea bargain. Keith also contends, for the first time on appeal, that admission of the statement violated his right to confront witnesses. We affirm, holding that Keith has no standing to claim violation of Michael's plea bargain, that admission of the statement did not violate his confrontation rights, and, as to Michael, that the plea bargain was not violated.

The Star Valley Grocery was robbed at gunpoint on June 14, 1981, by a man wearing a Halloween mask. The robber fled on foot pursued by several bystanders. They did not catch him, but retrieved the money which he dropped. They also provided police with a description which fit

Keith Dibley, and one man later identified Keith in a lineup. The store owner implicated another man, John Heath. Heath was not charged. He testified at Keith's trial that he and Michael had waited in Keith's truck while Keith robbed the store.

The significant portion of Michael's statement on plea of guilty admitted in Keith's trial reads:

> On about June 14, 1981, I was driving a pickup on Northlake Way. I was with two other people. They decided to rob the Star Valley Grocery located on Northlake Way in Kitsap County. I pulled the pickup behind a nearby gas station and waited while the store was robbed. I drove us all back to Bremerton after the robbery was committed.

A portion of the plea bargain consisted of Michael's handwritten statement, appended to his statement on plea of guilty and duly initialed by counsel and the trial judge, which reads:

> I have agreed to disclose knowledge I have about Count I & II of the amended information; Provided, I will not be asked nor coerced to provide information about nor testify concerning—charges against my brother, Keith Dibley.[1]

The brothers contend that admission of the statement violated this part of the plea agreement. The State suggests that Keith has no standing to raise this contention on appeal. We agree.

■ Although it is not strictly necessary that we discuss Keith's standing—because Michael, one of the parties, does have standing—we elect to do so. We see a disturbing trend in the plea bargaining process by which agreements are struck concerning extraneous collateral matters. Here, the plea bargain purported to affect a third party, Keith, who now appeals following his unsuccessful attempt to use it in his defense. This will not do.

A plea bargain should focus on the relationship between the accused and the State. Its purpose is to dispose of

---

[1]This part of the statement did not go to the jury.

charges *against the accused* without the need of a trial. *Santobello v. New York,* 404 U.S. 257, 260, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971); *see also State v. James,* 35 Wn. App. 351, 666 P.2d 943 (1983). Michael's agreement with the State disposed of the charges against Michael; it was none of Keith's affair. Keith is not a party aggrieved. RAP 3.1; *Sheets v. Benevolent & Protective Order of Keglers,* 34 Wn.2d 851, 210 P.2d 690 (1949).[2]

Michael's claim of a violation is accompanied by a request for specific performance—by which he means a new trial for Keith. Michael, interestingly, does not seek to have his plea set aside. His position is that he was—and is—trying to help his brother, not himself. This prompts us to make two points: First, the agreement was not violated, and we so hold. Second, agreements such as this may well violate public policy. Prosecutors, defense attorneys and judges should be alert to this problem.

As to the claimed violation, Michael really is contending that the statement constituted "his testimony" and, by offering it, the State essentially called him to testify where it had agreed it would not. The statement of this contention is almost sufficient to answer it. Michael said he would not supply information about his brother. He did not. The State said it would not call him to testify. It did not. The statement did not identify Keith. The State did not agree that the statement would not be used. There was no violation.

On its face the agreement appears to restrict the State's ability to call witnesses and to gather evidence and thus to interfere with the due administration of justice. Agreements that interfere with the administration of justice have long been held invalid and unenforceable in this state. *Eggleston v. Pantages,* 103 Wash. 458, 175 P. 34 (1918).

---

[2]Counsel for Keith submitted a brief which dealt thoroughly and at length with plea bargains in general but which offered no convincing basis for allowing Keith to raise this issue. At oral argument, attorneys for both brothers seemed to take the position that Keith was a third party beneficiary of Michael's agreement. We reject this proposition out of hand.

Every competent citizen is under an obligation to further the administration of justice as a matter of public policy when summoned by due process of law to give evidence. *Wright v. Corbin,* 190 Wash. 260, 67 P.2d 868 (1937). We do not look kindly upon an agreement, however expedient, which violates this fundamental principle.

We stop short of holding this agreement invalid; the issue was not argued by the parties and such a holding is not necessary to our disposition. However, the profession should be aware of our concern. Trial judges have the power and the duty to approve or disapprove plea agreements. *State v. Tourtellotte,* 88 Wn.2d 579, 584, 564 P.2d 799 (1977). They should be sensitive to this problem.

■ A more substantial issue is presented by Keith's contention that admission of the statement violated his Sixth Amendment right to confront witnesses. Although the State correctly asserts that this contention was not made at trial, it now appears firmly settled that issues affecting fundamental constitutional rights may be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984). We are required to consider this issue. We hold that the statement was admissible.

■ We disagree, however, with the State's contention that RCW 5.44.040[3] provided sufficient basis, standing alone, to support admission. That statute, on its face, only provides for authentication, *i.e.,* a method for proving that a document is what it purports to be. *Kaye v. Department of Licensing,* 34 Wn. App. 132, 659 P.2d 548 (1983); *see also State v. Thompson,* 35 Wn. App. 766, 669 P.2d 1270 (1983).[4] A document can be what it purports to be and still

---

[3]RCW 5.44.040 provides:

"Certified copies of public records as evidence. Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state, when duly certified by the respective officers having by law the custody thereof, under their respective seals where such officers have official seals, shall be admitted in evidence in the courts of this state."

[4]The statute has also been interpreted as a codification of the public records exception to the hearsay rule. *Kaye,* 34 Wn. App. at 134. It is questionable

be unreliable hearsay.

The record shows, however, that the trial court did not rely on the public record statute, but admitted the statement under ER 804(b)(3).[5] It did not err.

■ Extrajudicial statements are admissible in a criminal trial under ER 804 without violating the confrontation clause if the declarant is unavailable and if there is sufficient "indicia of reliability" to allow the jury to assess the truthfulness of the statements and guarantee trustworthiness. *State v. Dictado, supra; State v. Parris,* 98 Wn.2d 140, 654 P.2d 77 (1982). Keith argues that Michael could not be considered unavailable because the proponent of his statement, the State, procured his absence, citing ER 804(a)(6).[6] We disagree.

The bar of this rule does not apply unless the prosecutor's action was taken for the purpose of preventing the

whether that interpretation is still valid in view of the adoption of the Rules of Evidence. Even if it is, this document would not qualify. The public records exception assumed preparation by a public official in the performance of his duties. *Steel v. Johnson,* 9 Wn.2d 347, 115 P.2d 145 (1941); *Tire Towne, Inc. v. G & L Serv. Co.,* 10 Wn. App. 184, 518 P.2d 240 (1973).

[5]ER 804(b) provides that certain kinds of statements may be admitted if a declarant is unavailable. Subsection (3) is pertinent here:

"(3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

ER 804(a) provides that a declarant is unavailable if he:

"(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subsection (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means."

[6]ER 804(a)(6) provides:

"(6) A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying."

testimony. *United States v. Seijo,* 595 F.2d 116 (2d Cir. 1979). That was clearly not the State's reason for entering into the agreement. Moreover, the condition was Michael's idea and for his benefit. *He* declared *himself* unavailable in his statement. The State merely acquiesced.

The crucial question, therefore, is whether there was enough evidence of reliability to justify admission of the statement. We hold there was.

█ A number of factors have been suggested for evaluating the trustworthiness of extrajudicial statements. They include (1) the close proximity of the statement to the crime, (2) the tendency of the statements to be against the declarant's penal interest, (3) the declarant's incentive for truthfulness, (4) admissions of the defendant which corroborate the statement, and (5) the presence of other evidence at the trial to support the statement. *Dutton v. Evans,* 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970); *State v. Dictado,* 102 Wn.2d at 287; *State v. Boast,* 87 Wn.2d 447, 553 P.2d 1322 (1976).

Michael's statement was clearly against his penal interest,[7] and his concern for his brother plainly shows that he would not lie to harm him. Moreover, other evidence strongly corroborated the statement. Heath testified that he and Michael waited in Keith's truck. Two of the men who chased the robber reported seeing a truck at the location described by Michael. Their descriptions of the two men inside fit Michael and John Heath. One of the pursuers saw the robber get into the truck. There was ample evidence to supply the *Dictado* indicia and guaranties.

Because we uphold the conviction, we do not reach the State's cross appeal.

---

[7]The fact that statements made in conjunction with plea bargains are considered somewhat less reliable than other confessions (*State v. Parris,* 98 Wn.2d at 151) is not troublesome here. The position of Michael throughout has been consistent with helping, not hurting, his brother.

Affirmed.

PETRICH, C.J., and PETRIE, J., concur.

Review denied by Supreme Court January 24, 1985.