[No. 75928-6. En Banc.]
Argued June 23, 2005. Decided September 29, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. CALVIN M. SMITH,
*Petitioner*.

*Eric Broman* (of *Nielsen, Broman & Koch, P.L.L.C.*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Carla B. Carlstrom, Deputy,* for respondent.

*Cherilyn G. Church* on behalf of Washington Defender Association, amicus curiae.

¶1 J.M. JOHNSON, J. — Petitioner Calvin Smith challenges on several grounds a Court of Appeals decision affirming his conviction for driving while license suspended or revoked (DWLS in the first degree) due to being found an habitual traffic offender. We hold that there is insufficient evidence to support a necessary element of that crime. Accordingly, we reverse and remand to vacate the conviction and dismiss the charge with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

¶2 On May 7, 2002, Smith led police on a lengthy, high-speed car chase after they attempted to arrest him as a "wanted fugitive." Clerk's Papers (CP) (51817-8-I) at 3. The State subsequently charged Smith with numerous criminal charges,[1] including, as is relevant here, one count of DWLS in the first degree pursuant to RCW 46-.20.342(1)(a). Specifically, the amended information al-

---

[1] Pursuant to this incident and another, earlier car chase, the State also charged Smith with one count of delivery of cocaine, two counts of attempting to elude a pursuing police vehicle, and one count of third degree assault. He was convicted on all charges except the assault charge. Those convictions are not before us in this appeal.

leged that "Smith . . . did drive a motor vehicle in this state while his . . . privilege to do so was suspended . . . in this or any other state due to being found a habitual traffic offender." CP (51816-0-I) at 12.

¶3 At trial, the State offered into evidence as exhibit two a certified statement from the records custodian at the Department of Licensing (DOL). In pertinent part, the exhibit asserted that Smith "[h]ad not reinstated his . . . driving privilege. Was suspended/revoked in the first degree. Subject was not eligible to reinstate his . . . driving privilege on the above date of arrest." State's Ex. 2.

¶4 When the State offered the exhibit into evidence, Smith's lawyer objected to "foundation" but was overruled. Verbatim Report of Proceedings (VRP) (Aug. 21, 2002) at 160. Despite the exhibit's statement that certain portions of Smith's driving record were attached, including an order of revocation for Smith's license, no records were attached or offered into evidence.

¶5 Later during trial, Smith engaged in the following exchange about the car chase with the prosecutor:

Q. You didn't stop your car?

A. Yeah, I do.

Q. Okay. You do. You don't stop when they're trying to arrest you?

A. Yeah, I do.

Q. Completely cooperative?

A. Yeah, that's why I'm suspended in the first degree.

Q. That's why you were suspended in the first degree?

A. Yeah, for driving.

Q. So you acknowledge on May 7th your license was suspended in the first degree?

A. Right.

VRP (Aug. 27, 2002) at 514-15.

¶6 Additionally, Smith's counsel stated during closing argument:

Driving with license suspended in the first degree is clearly set forth and in this case as an example in this charge there really isn't any dispute. The only evidence you have on this point is that the privilege to drive is bestowed upon the citizens of the State of Washington and by certain actions it is taken away. You have a set of facts that you can agree on because there's no reason not to agree. The State has met its burden. The State has proved to you beyond a reasonable doubt because nothing has been raised in evidence to create a doubt that he did not have the privilege to drive.

*Id.* at 548.

¶7 The judge instructed the jury that to convict Smith of DWLS in the first degree, it must find that on May 7, 2002, "the defendant's privilege to drive was suspended or revoked in the first degree."[2] CP (51816-0-I) at 40. The jury found Smith guilty, and the Court of Appeals affirmed. *State v. Smith*, 122 Wn. App. 699, 94 P.3d 1014 (2004). Smith then petitioned this court for review,[3] which we granted.

---

[2] In its entirety, the DWLS "to convict" instruction provided:

To convict the defendant of Driving while Licensing Suspended or Revoked in the First Degree, as charged in Count V, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 7th day of May 2002, the defendant drove a motor vehicle;

(2) That at the time *the defendant's privilege to drive was suspended or revoked in the first degree* in this or any other state; and

(3) That the acts occurred in King County, Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as charged in count V.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as charged in count V.

CP (51816-0-I) at 40 (emphasis added).

[3] Amicus Washington Defender Association submitted a memorandum in support of Smith's petition for review. The State subsequently filed a motion to strike declarations, attachments, and factual examples in that memorandum. We grant the motion to strike, as the material in question is outside the scope of the record in violation of RAP 10.3(a)(5).

## II. STANDARD OF REVIEW

■■ ¶8 When considering facts in a challenge to sufficiency of the evidence, courts will draw all inferences from the evidence in favor of the State and against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A reviewing court will reverse a conviction for insufficient evidence only where no rational trier of fact could find that all elements of the crime were proved beyond a reasonable doubt. *Id.*

■ ¶9 We address questions of statutory construction de novo. *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005).

## III. ANALYSIS

A. Hearsay Challenge

■ ¶10 Smith first asserts that exhibit two, the statement from the DOL custodian of records, was improperly admitted into evidence because it contained hearsay not within the scope of any exception. We would normally address this rule-based argument first before addressing the constitutional questions raised by Smith. *See State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981). However, we do not reach the merits of Smith's hearsay argument because the issue was not properly preserved at trial.[4] *See* RAP 2.5(a).

¶11 When the State moved to admit exhibit two into evidence, Smith's counsel merely objected to "foundation." This is insufficient to preserve a hearsay objection for appeal. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985); *State v. Avendano-Lopez*, 79 Wn. App. 706, 710, 904 P.2d 324 (1995); *City of Seattle v. Carnell*, 79 Wn. App. 400, 403, 902 P.2d 186 (1995).

¶12 As the State argued here, the judge reasonably reviewed the exhibit "to determine whether it had the

---

[4] Accordingly, the Court of Appeals erred in reaching the merits of this argument. *See Smith*, 122 Wn. App. at 703-05.

502

appropriate seal from the State of Washington to establish its authenticity under ER 902." Suppl. Br. of Resp't at 11 n.8. Having no objection requiring her to rule on hearsay, the judge allowed the exhibit into evidence.

B. Sufficiency of the Evidence

 ¶13 Smith next contends that there is insufficient evidence to prove an essential element of the crime. In a criminal prosecution, due process requires the State to prove every element of the charged crime beyond a reasonable doubt. *State v. Teal*, 152 Wn.2d 333, 337, 96 P.3d 974 (2004); *In re Winship*, 397 U.S. 358, 361-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).[5] Implicit in this principle is the requirement that jury instructions list all of the elements of the crime, since failure to list all elements would permit the jury to convict without proof of the omitted element. *See State v. Linehan*, 147 Wn.2d 638, 653-54, 56 P.3d 542 (2002). In determining the elements of a statutorily defined crime, principles of statutory construction require us to give effect to all statutory language if possible. *See State v. Tandecki*, 153 Wn.2d 842, 847, 109 P.3d 398 (2005); *Roggenkamp*, 153 Wn.2d at 624.

 ¶14 RCW 46.20.342 provides in part:

(1) It is unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state. . . .

(a) A person found to be an habitual offender under chapter 46.65 RCW, who violates this section while an order of revocation issued under chapter 46.65 RCW prohibiting such operations is in effect, is guilty of driving while license suspended or revoked in the first degree, a gross misdemeanor. . . .

¶15 Under the plain terms of this statute, and as charged in the information, the criminal act is DWLS in the first degree as a result of being found to be an habitual

---

[5] "Elements" are "[t]he constituent parts of a crime—usu[ally] consisting of the actus reus, mens rea, and causation—that the prosecution must prove to sustain a conviction." BLACK'S LAW DICTIONARY 559 (8th ed. 2004).

traffic offender under chapter 46.65 RCW. RCW 46.20-.342(1)(a); CP (51816-0-I) at 12. Accordingly, Smith now asserts that the State was required to prove not only that his license was revoked on May 7, 2002, but that his license had been revoked due to a finding that he was an habitual traffic offender. He further claims that the State's evidence on this element—exhibit two and Smith's statement on the stand—was insufficient because it showed only that his license had been revoked "in the first degree," without providing any explanation as to the meaning of this designation. Similarly, he claims that the "to convict" instruction was defective because it merely required the jury to find that his license had been revoked "in the first degree." We agree.

¶16 The Court of Appeals concluded, and the State argues here, that a "person who has his license revoked in the first degree is an habitual traffic offender as a matter of law." *Smith*, 122 Wn. App. at 703.[6] An accused can be convicted of first degree driving with a revoked license only if his license has been revoked due to a finding that he is an habitual traffic offender under chapter 46.65 RCW. However, the jury was never informed of this fact.

¶17 The root problem here is that the prosecutor, trial court, and Court of Appeals all treat the crime as consisting of driving with a license that has been "revoked in the first degree." DOL too seems to treat revocations as occurring in degrees, hence, its representation in exhibit two that Smith's license had been "suspended/revoked in the first degree." State's Ex. 2.

¶18 While it may be convenient shorthand to describe revocations in this way, the DWLS statute describes no

---

[6] The Court of Appeals relied on *Upward v. Department of Licensing*, 38 Wn. App. 747, 689 P.2d 415 (1984), in reaching this conclusion, but *Upward* is inapposite. The *Upward* court merely held that, in a prosecution for driving with a license that was revoked based on habitual offender status, the State need not prove the validity of traffic offenses underlying the habitual offender finding. *Id.* at 752-53. But Smith is not challenging his underlying traffic offenses, nor does he suggest that the State must prove their validity. He is simply arguing that the State failed to prove his habitual offender status during this prosecution.

"degrees" of revocations. Under the statute's plain terms, the crime is *driving with a license that has been suspended or revoked*, the *degree of which* depends on the *reason* for the revocation. *See* RCW 46.20.342(1)(a)-(c).[7]

¶19 The evidence in this case, however, merely shows that Smith's license was revoked "in the first degree," without any explanation as to the reason Smith's license was revoked. In the absence of evidence providing such an explanation, no juror could find that Smith's license had been revoked because he had been found to be an habitual traffic offender under chapter 46.65 RCW. Had the State introduced evidence that contained a finding that Smith was an habitual traffic offender under chapter 46.65 RCW, e.g., the revocation order, this element would have been satisfied. But, as noted above, although exhibit two purported to attach such an order, no portion of Smith's actual driving record was ever offered into evidence.

¶20 To uphold Smith's conviction under these circumstances would render the portions of RCW 46.20.342(1) that distinguish between crimes defined in that statute meaningless. Accordingly, we hold that in a prosecution for DWLS in the first degree, the State must prove that the accused was under an order of revocation as an habitual offender under chapter 46.65 RCW at the time of his violation. The State failed to produce evidence on this element necessary to support Smith's conviction.

---

[7] First degree DWLS lies where an individual drives while his license is suspended or revoked due to a finding that he is an habitual offender under chapter 46.65 RCW. RCW 46.20.342(1)(a).

Second degree DWLS lies where an individual (1) drives while his license is suspended or revoked for any of the numerous reasons specified in the subsection and (2) is not eligible to have his license reinstated. RCW 46.20.342(1)(b).

Third degree DWLS lies where an individual (1) drives while his license is suspended or revoked for any of the reasons specified in the subsection or (2) drives while his license is suspended but is eligible for reinstatement. RCW 46.20.342(1)(c).

## C. Harmless Error

¶21 If a reviewing court finds insufficient evidence to prove an element of a crime, reversal is required. *State v. Hickman*, 135 Wn.2d 97, 103, 954 P.2d 900 (1998). "Retrial following reversal for insufficient evidence is 'unequivocally prohibited' and dismissal is the remedy." *Id.* The State asserts, however, that if any error occurred in this case, it was harmless in light of defense counsel's statement during closing argument. We cannot adopt this theory.

¶22 As noted by the jury instructions in this very case, "[t]he attorneys' remarks, statements and arguments are intended to help you understand the evidence and apply the law. *They are not evidence.*" CP (51816-0-I) at 19 (emphasis added); *see also State v. Refuerzo*, 102 Wn. App. 341, 345, 7 P.3d 847 (2000); *but see State v. Lord*, 117 Wn.2d 829, 860, 822 P.2d 177 (1991) (finding that any prejudice that may have resulted from the admission of certain evidence was eliminated by counsel's concession during closing argument).

¶23 Here, the State produced no evidence regarding Smith's habitual offender status under chapter 46.65 RCW. To give defense counsel's remarks the effect argued by the State would be to treat them as a guilty plea. But a guilty plea must be made knowingly, voluntarily, and intelligently. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004); *see also* CrR 4.2(e). There is no suggestion that these conditions were met here.

## IV. CONCLUSION

¶24 Because Smith's sufficiency of the evidence argument is dispositive, we need not address his other contentions. We reverse and remand to vacate Smith's conviction

and dismiss the DWLS as habitual offender charge with prejudice.

¶25 It is so ordered.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.